IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL GUNDERSEN<br><br>Plaintiff,<br><br><br>vs.<br><br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br><br>Case No. 2:10-cv-00050<br><br>Judge Dee Benson |

  Before the Court is: (1) Plaintiff Michael Gundersen's ("Plaintiff") Motion for Summary Judgment on his Complaint against Defendant Metropolitan Life Insurance Company ("Defendant"); and (2) Defendant's Motion for Summary Judgment on its Counterclaim against Plaintiff. Both motions are made pursuant to Federal Rule of Civil Procedure 56. The fundamental question in the case is whether Plaintiff received the appropriate amount of benefits under his insurance plan with Defendant. Plaintiff maintains he is owed $50,000 for a covered loss that Defendant has not paid. Defendant holds that it inadvertently overpaid Plaintiff and, therefore, Plaintiff should repay Defendant $50,000. The Court will decide the issue by

determining whether Defendant's decision to deny benefits to Plaintiff was reasonable under an arbitrary and capricious standard of review.

## I. FINDINGS OF FACT

### A. Life Plan Benefit Handbook and "Master Plan Document"

At the outset, it is important to clarify that there are two different documents involved in this case. The first is the 2008 Life Plan Benefit Handbook ("2008 SPD"). This was the document that provided the actual, effective terms applicable to Plaintiff's claim. The second is the so-called "Master Plan Document"("MPD"). Defendant mistakenly believed the MPD contained the terms of Plaintiff's Accidental Death and Dismemberment ("AD&D") policy. A series of errors on Defendant's part in relying on the MPD when Defendant should have relied on the 2008 SPD to determine Plaintiff's claims form the basis for many of the issues in this case.

### B. History

Defendant insured Plaintiff under a group life insurance policy ("the Policy") provided by Plaintiff's employer, Intermountain Healthcare. The Policy was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Policy included AD&D benefits in the maximum amount of $200,000.

On June 20, 2008, Plaintiff was in a motorcycle accident that rendered him paralyzed from the waist down. Three days later, Plaintiff experienced uncontrolled hemorrhaging that required doctors to amputate his right leg above the knee. Shortly after the amputation, Plaintiff's wife submitted a claim for AD&D benefits in connection with the amputation of

Plaintiff's leg. Defendant paid Plaintiff $150,000 in accordance with the MPD's coverage for the loss of a leg. The MPD indicated that Plaintiff was eligible for 75% of the $200,000 Policy benefit. (Pl.'s Mem. Supp. Mot. Summ. J. 3-4 (Dkt. No. 40)).

Unfortunately, it was later discovered that the MPD was not in effect when the claim was processed. Defendant had mistakenly entered the MPD into Defendant's electronic system in 2007. It was not until Plaintiff made arguments about the MPD in his opening brief (Dkt. No. 40) that Defendant realized it had mistakenly overpaid Plaintiff by relying on the MPD. Defendant should have relied on the 2008 SPD, the effective certificate of insurance, which did not provide coverage for the loss of a leg, but did provide a 50% benefit – $100,000 in Plaintiff's case – for the loss of a foot. It is this $50,000 over-payment that forms the cause of action for Defendant's Counterclaim.

Shortly after Plaintiff's wife submitted the claim for the amputated leg, Plaintiff submitted an application for benefits for his paralysis. Defendant denied this claim on February 2, 2009. Defendant based its denial on the definitions of paraplegia and paralysis in the Policy. The Policy defined paraplegia as: "total paralysis of both lower limbs." (Def's. Mem. Opp'n to Pl.'s Mot. Summ. J. 24) (Dkt. No. 47)). The Policy defined paralysis as: "the loss of use, without severance, of a limb." (*Id.*) Defendant determined that because Plaintiff's right leg had been severed, Plaintiff was not eligible for benefits based on his paralysis. Plaintiff appealed the decision based on the grounds that the two losses, although resulting from the same accident, were independent of each other and not clinically related. On August 19, 2009, defendant upheld the denial of Plaintiff's claim.

## II. STANDARD OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). A court considering summary judgment should consider the evidence in the light most favorable to the non-moving party. *See, e.g. Gwinn v. Awmiller*, 354 F.3d 1211, 125 (10th Cir. 2004).

### B. Employee Retirement Income Security Act

The United States Supreme Court has articulated the appropriate standard of review in an ERISA case involving denied benefits: "Consistent with established principles of trust law, we hold that a denial of benefits under [ERISA] is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

A court "applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135

(10th Cir. 1998) (citing *Firestone*, 489 U.S. at 115). A district court will uphold a plan administrator's decision "unless it is 'not grounded on *any* reasonable basis.'" *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991)). An administrator's decision does not need to be the only logical decision, or even the best decision. *Kimber*, 196 F. 3d at 1098. Rather, the court's "responsibility lay in determining whether the administrator's actions were arbitrary and capricious, not in determining whether [the claimant] was, in the district court's view, entitled to disability benefits." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992).

The Supreme Court has ruled that a conflict of interest exists in cases where a professional insurance company is both the plan administrator and the claims payor. *Metropolitan Life Ins. Co. v. Glen*, 554 U.S. 105 (2008). In these instances, this conflict should be "weighed as a 'factor in determining whether there is an abuse of discretion,'" on the part pf the insurance company. *Metropolitan Life Ins. Co.*, 554 U.S. at 115 (citing *Firestone*, 489 U.S. at 115). To incorporate this factor, the court will employ a "sliding scale approach" where the court will apply "an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict." *Weber v. GE Group Life Assurance Co.*, 541 F.3d 997, 1010 (10th Cir. 2008) (citing *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007)).

### III. ANALYSIS

**A. The Arbitrary and Capricious Standard Applies**

Both parties concede that the 2008 SPD delegated discretionary authority to Defendant to

determine claims. Therefore, the Court will utilize the arbitrary and capricious standard to weigh the reasonableness of Defendant's decision to deny benefits. In addition, both parties agree that Defendant is both the plan administrator and the claims payor; thus, a conflict of interest exists that the Court will weigh in determining whether there has been an abuse of discretion. Plaintiff argues that because Defendant demonstrated a significant conflict of interest in determining Plaintiff's claim, Defendant mishandled Plaintiff's appeal, and Defendant filed a retaliatory counterclaim, the standard of review should be *de novo*. The Court does not find Plaintiff's argument persuasive. Nonetheless, based on the analysis below, even under the more deferential standard, the Court finds Defendant's decision to deny Plaintiff benefits for paralysis to be arbitrary and capricious.

**B. Defendant's Decision was Arbitrary and Capricious**

The Court points out initially that "[w]e have long held that insurance policies are interpreted according to their plain meaning." *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818, 829-30 (10th Cir. 2008) (referencing *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976) ("Terms of an insurance policy must be considered not in a technical but in a popular sense, and must be construed to their plain, ordinary and accepted sense in the common speech of men . . . .")). "Furthermore, '[i]nsurance contracts, because of the inequality of the bargaining position of parties, are construed strictly against the insurer.'" *Kellogg*, 549 F.3d at 830 (citing *Mutual of Omaha Ins. Co. v. Russell*, 402 F.2d 339, 345 n. 19 (10th Cir. 1968).

It abuses common sense to claim that Plaintiff did not suffer two covered losses in this case. It is clear from the record that Plaintiff suffered: (1) paraplegia; and (2) an amputated leg.

It is also undisputed that Plaintiff suffered paraplegia three days before his leg was amputated. Furthermore, it is clear that Plaintiff *still* suffers from paraplegia, albeit with only part of his right leg. Consequently, it behooves the Court to ask why there would be any question to the contrary that Plaintiff suffered two covered losses under the Policy.

**1. Submission Order of Plaintiff's Claims**

Defendant emphasizes the order in which Plaintiff's claims were submitted to suggest there was only one covered loss in this case. Defendant concedes as much when it claims:

> [Plaintiff] was responsible for the submission of his AD&D claim under the 2008 SPD. There is no dispute that the motorcycle crash on June 20, 2008 caused [Plaintiff] to be a paraplegic. However, [Plaintiff] did not base his first claim on paraplegia, but instead based that claim on the amputation of his right leg. [Defendant] could only respond to the claim as submitted, and approved the payment of the claim, albeit at a higher benefit level unavailable under the 2008 SPD.
>
> When [Plaintiff] submitted his second claim for paraplegia, [Defendant], once again, reviewed the claim as presented under the terms of the 2008 SPD and the evidence before it in the administrative record.

(Def's. Mem. Opp'n to Pl.'s Mot. Summ. J. 23-24) (Dkt. No. 47)).

Defendant appears to claim that its hand was forced: that Defendant had no choice but to conclude Plaintiff only suffered one covered loss given the order in which Plaintiff submitted his claims. Making a decision based on something so trivial in this case as the timing in which Plaintiff submitted his claims is unreasonable, especially in light of the undisputed evidence that Plaintiff suffered paralysis first and amputation second. Taking Defendant's rationale on its face, had Plaintiff merely submitted his claim for paralysis first, Defendant would have paid the

benefits for the paralysis and the amputation. This is so even though the only fact that changed is the order in which the claims were submitted. Defendant's reliance on the order in which the claims were submitted in light of the undisputed evidence is unreasonable and demonstrates the arbitrary nature of Defendant's decision.

**2. Timing of Injuries**

Defendant makes things worse for itself when, in addition to over-emphasizing the order in which the claims were submitted, it admits to not considering the timing of the injuries: "There was no reason for [Defendant] to consider the timing of the injuries, and [Defendant] reasonably did not base its determination on a timing factor." (*Id.* at 25).

Unfortunately for Defendant, timing is critical in this case given the undisputed evidence that Plaintiff suffered paralysis three days before his leg was amputated. Plaintiff suffered the covered loss of paralysis – without severance of a limb – for three days. Then, three days after the accident, Plaintiff suffered a second covered loss – amputation of the right leg, which was due to an infection that was independent from the cause of the paralysis. Now, Plaintiff suffers from both paralysis and an amputated right leg. To willfully blind themselves to such a self-evident issue as timing in this case demonstrates that Defendant's denial of benefits was unreasonable and further evinces the arbitrary nature of Defendant's decision.

**3. Definition of "Paralysis."**

Finally, in light of Defendant's over-emphasis on the order of Plaintiff's claim submissions, and Defendant's reluctance to consider the timing of Plaintiff's injuries, Defendant uses the literal definition of "paralysis" in the 2008 SPD to obscure the substance of Plaintiff's

claims. Defendant argues that the 2008 SPD "expressly excluded from the definition of 'paralysis' a situation involving the severance of a limb." (*Id.* at 24). However, Defendant does not clarify why this definition of paralysis excludes the three days that Plaintiff was a paraplegic, with both legs fully intact, before the leg was amputated. Nor does Defendant clarify why the definition in the 2008 SPD excludes the fact that much of Plaintiff's right leg remains intact. In short, the Court agrees with Plaintiff's analysis:

> [Plaintiff] was and remains paralyzed in both his right and left leg. He has lost the use, *without severance*, of his entire left leg. He has also lost the use of what remains of his right leg. However, the fact that *one* of his limbs has been severed does not disqualify him for a benefit under the definition of "paraplegia" or "paralysis" in light of the fact that his left leg remains paralyzed without severance.

(Pl.'s Reply Mem. Supp. Mot. Summ. J. 7 (Dkt. No. 49)).

Given the analysis above, Defendant's decision to deny Plaintiff benefits for both covered losses was arbitrary and capricious. Plaintiff is therefore entitled to the $100,000 benefit based on the Policy definition of "paraplegia," and is also entitled to the $100,000 benefit for the amputation of his right foot. Because Plaintiff has already been paid $150,000, and the 2008 SPD provides for covered losses only up to the full amount of benefits available under the AD&D policy, Plaintiff is entitled to an additional $50,000. Moreover, because the Court finds in favor of Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment on its Counterclaim is moot.

## IV. PREJUDGMENT INTEREST AND ATTORNEY FEES

### A. Prejudgment Interest

In addition to determining the merits of the summary judgment motions above, the Court

must also determine whether Plaintiff is entitled to prejudgment interest and attorney fees. It is well established in the Tenth Circuit that an award of prejudgment interest is appropriate in ERISA cases where state statutes provide for such payments. *Allison v. BankOne – Denver*, 289 F.3d 1223, 1243-44 (10th Cir. 2002). The court may award prejudgment interest in ERISA cases to "make persons whole for the loss suffered because they were denied use of money to which they were legally entitled." *Caldwell v. Life Ins. Co. Of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002). The award of prejudgment interest rests in the discretion of the trial court. *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008).

A court will engage in a two-step analysis to determine the award of prejudgment interest: "The district court must first determine whether the award of prejudgment interest will serve to compensate the injured party." *Omasta v. The Choices Benefit Plan*, 352 F. Supp. 2d 1201, 1212 (D. Utah 2004). Second, "even if the award of prejudgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of prejudgment interest." *Caldwell,* 287 F.3d at 1286.

In this case, an award of prejudgment interest will serve to compensate Plaintiff for the lengthy period of time that he has not had access to the use of benefits which were rightfully his. In addition, there is nothing in the record to indicate that equity would preclude the award of prejudgment interest. Thus, Plaintiff is entitled to prejudgment interest at the 10% *per annum* rate provided for by Utah Code Annotated § 15-1-1(2) beginning on August 19, 2009, the date of Defendant's appeal determination.

**B. Attorney Fees and Costs**

An award of attorney fees and costs under ERISA is entirely within the court's discretion. 29 U.S. C. § 1132(g)(1). The Tenth Circuit has held that "[c]ourts should not award attorneys' fees in ERISA as a matter of course." *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 (10th Cir. 1992) (internal quotation marks omitted). The court should consider the following factors in determining whether to grant attorney fees and costs:

> (1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy an award of attorney fees; (3) whether or not an award or attorney fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions.

*Deboard v. Sunshine Mining and Refining Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000). "[T]he five . . . factors are merely guidelines, and while courts need not consider each factor, no single factor should be held dispositive." *McGee*, 953 F.2d at 1209 n.17.

In regards to the first and fifth factors, the Court notes initially that, "[a] party is not culpable merely because it has taken a position that did not prevail in litigation." *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 257 (3d Cir. 1994). Evidence of bad faith normally involves conduct that is "reprehensible" or "wrong." *See, e.g., McPherson*, 33 F.3d at 257. In this case, even though the Court does not find the merits of Defendant's argument persuasive, and finds Defendant's actions regarding the MPD to be inattentive, it does not find Defendant's actions reprehensible. Therefore, the Court finds that Defendant did not act in bad faith.

As regards the second factor, the Court finds that Defendant, as a major insurance company, is certainly in a position to pay an award of attorney fees. With regard to the third factor, insurers should be reminded that, as the Tenth Circuit put it, "[t]erms of an insurance policy must be considered not in a technical but in a popular sense, and must be construed to their plain, ordinary and accepted sense in the common speech of men . . . ." *Webb*, 536 F.3d at 339). As to the fourth factor, the only member of any plan that this case involved is the Plaintiff. Because this case involved a fact specific review of Plaintiff's claim, there were no benefits conferred on, or that directly affected, other parties.

Considering all of the circumstances, with special attention paid to the lack of bad faith on the part of the insurer, the Court denies Plaintiff's request for attorney fees and costs.

## V. CONCLUSION

Based on the analysis above, the Court finds that there is no genuine dispute as to a material fact that Defendant's decision to deny Plaintiff benefits for his paralysis was arbitrary and capricious. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED. Because Plaintiff's motion is granted, Defendant's Motion for Summary Judgment is MOOT. Plaintiff's request for prejudgment interest is GRANTED. Plaintiff's request for attorney fees and COSTS is DENIED.

IT IS SO ORDERED.

DATED this 30th day of November, 2011.

_____
Dee Benson
United States District Judge